**BEFORE THE UNITED STATES JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE: 2026 MULTISTATE CYCLOSPORIASIS OUTBREAK LITIGATION (NO. II) | **MDL No. 3203** |

**PLAINTIFFS AYYAD, BOGARD, CARUSO, HERCULA, AND O'HARA'S RESPONSE IN OPPOSITION TO MOTION FOR TRANSFER AND COORDINATION OF ACTIONS**

Plaintiffs in five of the personal-injury actions on Movants' Schedule of Actions[1] (collectively, the "Responding Plaintiffs") respond in opposition to the Burnham/Jones Plaintiffs' Motion for Transfer and Coordination of Actions Pursuant to 28 U.S.C. § 1407 (the "Motion"). Responding Plaintiffs respectfully request the Panel decline transfer and coordination of these matters for the reasons explained herein.

## I. INTRODUCTION AND RELIEF REQUESTED

Responding Plaintiffs are sick people with individual claims. Each must prove that he or she ate at a particular restaurant on a particular date, consumed lettuce contaminated with *Cyclospora*, contracted cyclosporiasis, and was injured. Each will try that case where it was filed. Responding Plaintiffs ask the Panel to deny centralization and to leave their actions where they were filed.

The Burnham/Jones Plaintiffs' ("Movants") Motion seeks to consolidate fourteen actions in the Eastern District of Michigan. ECF No. 1 at 1. But fifty-two of the sixty-eight

[1] *Ayyad v. Taylor Fresh Foods, Inc. et al., LLC*, No. 1:26-cv-01648 (N.D. Ohio); *Caruso v. Taco Bell of America, LLC*, *et al.*, No. 1:26-cv-01661 (N.D. Ohio); *Hercula v. Taco Bell of America, LLC*, *et al.*, No. 2:26-cv-12524 (E.D. Mich.); *O'Hara v. Border Foods, LLC*, *et al.*, No. 1:26-cv-02183 (W.D. Mich.); and *Bogard v. ABTB Louisville LLC*, *et al.*, No. 3:26-cv-00607 (W.D. Ky.). Additionally, counsel for Responding Plaintiffs has recently filed an additional and potentially related action not yet identified by Movants, *Zaragoza v. Taylor Fresh Foods, Inc.*, *et al.*, No. 1:26-cv-10148 (N.D. Ill.). Counsel for Responding Plaintiffs intends to file a notice concurrently with this Response pursuant to Rule 6.2(d) of the Rules of Procedure of the United States Judicial Panel on Multidistrict Litigation.

plaintiffs Movants count are Movants themselves, named in two actions already pending in that district, three of the six actions there already before a single judge. ECF No. 1 at 2–3; ECF No. 1-1 at 9. Movants therefore ask the Panel to transfer everyone else's cases to the district where their own cases already sit. They do not explain what Rule 42 cannot give them there. What 28 U.S.C. § 1407 would add is the power to bring in plaintiffs who have said they do not want to come.

The rest of the docket is not one litigation but two. Two purchaser class actions in the Northern District of California plead economic loss and no illness; the remaining actions are foodborne-illness cases, two of which are putative class actions. And when this outbreak was last before the Panel, nearly all parties that addressed centralization opposed it, both defendants and plaintiffs alike.

For the reasons below, the Panel should deny the Motion. In the alternative, any MDL should be limited to the economic-loss class actions and should exclude the individual personal-injury actions.

## II. FACTS

### A. The outbreak and the involved actions.

Beginning in approximately May 2026, the U.S. Food and Drug Administration ("FDA"), the U.S. Centers for Disease Control and Prevention ("CDC"), and various state public health officials linked a multistate outbreak of cyclosporiasis to iceberg lettuce supplied by Taylor Farms de Mexico, Taylor Farms California, Inc., and Taylor Fresh Foods, Inc. (collectively "Taylor Farms") and served at Taco Bell restaurants (the "Taylor Farms Outbreak").[2] Since that time, the number of individuals infected with *Cyclospora*

[2] U.S. Food & Drug Admin., *Investigation of Multistate Outbreak of Cyclospora Illnesses: Iceberg Lettuce (July 2026)*, https://www.fda.gov/food/outbreaks-foodborne-illness/investigation-multistate-outbreak-

associated with iceberg lettuce supplied by Taylor Farms has increased to over 11,000 people as of this Response.[3] The geographic scope of this outbreak has also increased since early May. While the outbreak appears concentrated in much of the Midwest, CDC now confirms that people in twenty states were part of the Taylor Farms Outbreak.[4] On July 17, 2026, Taylor Farms initiated a recall of product associated with the outbreak, some of which product was distributed to consumers through Walmart stores in the eastern half of the country.

While the Taylor Farms Outbreak appears the largest outbreak in terms of the number of those sickened, FDA and CDC have confirmed additional outbreaks of *Cyclospora* over the course of the summer. In all, FDA counts four additional active *Cyclospora* outbreaks it is currently investigating nationwide.[5] None of these four outbreaks have been tied to a source and FDA identifies it continues to actively investigate each one.

With this background in mind, Movants identify fourteen involved actions allegedly linked to the Taylor Farms Outbreak. ECF No. 1 at 2. They divide into two groups: actions alleging economic loss and actions alleging personal injury.

Four actions are styled as putative class actions, with three of these putative class actions pending in the Northern District of California. Two of these actions are brought by purchasers who allege economic harm due to the "presence of bacteria" in Taylor Farms

---

cyclospora-illnesses-iceberg-lettuce-july-2026; Ctrs. for Disease Control & Prevention, *Cyclospora Outbreak Linked to Iceberg Lettuce*, https://www.cdc.gov/cyclosporiasis/outbreaks/07-26/index.html (last visited Aug. 31, 2026).

[3] *Id.*

[4] Ctrs. for Disease Control & Prevention, *Where People Got Sick: Cyclospora Outbreak, July 2026*, https://www.cdc.gov/cyclosporiasis/outbreaks/07-26/locations.html (last visited Aug. 27, 2026).

[5] U.S. Food & Drug Admin., *Investigations of Foodborne Illness Outbreaks*, https://www.fda.gov/food/outbreaks-foodborne-illness/investigations-foodborne-illness-outbreaks (last visited Aug. 31, 2026).

product and seek to recover damages "for the purchase of" Taylor Farms product. Complaint ¶¶ 35–36, *Gelbspan et al. v. Taylor Fresh Foods, Inc.*, No. 5:26-cv-07346-NC (N.D. Cal. June 16, 2026), ECF No. 1; Complaint ¶ 29, *Null et al. v. Taylor Fresh Foods, Inc. et al*., No. 5:26-cv-07629 (N.D. Cal. July 23, 2026), ECF No. 1. None of these actions allege any putative class member suffered from cyclosporiasis, and the *Null* matter expressly disclaims bodily injury. Complaint ¶ 2, *Null et al. v. Taylor Fresh Foods, Inc. et al*., No. 5:26-cv-07629 (N.D. Cal. July 23, 2026), ECF No. 1 ("This is an economic-loss case, not a personal-injury case. Plaintiffs do not seek recovery for bodily injury."). One additional action arguably could be grouped alongside the economic harm putative class actions as its proposed class doesn't require personal injury, only that a putative class member "consumed iceberg lettuce from Taco Bell[] that was contaminated with Cyclospora." Complaint ¶ 35, *Giles v. Taylor Fresh Foods, Inc. et al.,* No. 5:26-cv-08178 (N.D. Cal. Aug. 6, 2026), ECF No. 1. The other putative class action proposes a nationwide class of those persons who consumed lettuce served at Taco Bell and who were later diagnosed with cyclosporiasis. Complaint ¶ 28, *Koss v. Taco Bell Corp. et al.*, No. 26-cv-12675 (E.D. Mich. Aug. 3, 2026), ECF No. 1.

The remaining ten matters are individual personal injury actions. Together the fourteen actions name sixty-eight plaintiffs. ECF No. 1-1 at 2. The vast majority of them are part of the *Burnham* (seven plaintiffs) and *Jones* (forty-five plaintiffs) matters currently pending in the Eastern District of Michigan. Responding Plaintiffs' actions are individual claims under the law of three states — Ohio in *Ayyad* and *Caruso*, Michigan in *Hercula* and *O'Hara*, and Kentucky in *Bogard*.

**B. The prior proceeding before the Panel.**

On July 17, 2026, plaintiffs Victor Granados and Kait Gelbspan moved under Section 1407 to centralize certain actions in the Northern District of California. Motion to Transfer and Centralize Related Actions for Consolidated or Coordinated Pretrial Proceedings, *In re: 2026 Multistate Cyclosporiasis Outbreak Litigation*, MDL No. 3196 (J.P.M.L. 2026), ECF No. 1. On August 17, 2026, the Granados/Gelbspan movants withdrew their motion, and the Panel directed any party wishing to respond to state whether it supported centralization. Six parties responded, the majority of them opposing centralization. One plaintiff, Dawn Koss, supported centralization in the Eastern District of Michigan, as did the Burnham/Jones Plaintiffs.

On August 20, 2026, the Panel deemed the Granados/Gelbspan motion withdrawn and vacated the September 24, 2026, hearing session. Order Deeming Motion Withdrawn and Vacating the September 24, 2026, Hearing Session Order, *In re: 2026 Multistate Cyclosporiasis Outbreak Litigation*, MDL No. 3196 (J.P.M.L. 2026), ECF No. 36. The Panel added that "[s]hould any party wish to seek centralization at a later date, they may do so." *Id.* It did not reach the merits.

**C. Burnham/Jones Plaintiffs' Present Motion.**

On August 21, 2026, the Burnham/Jones Plaintiffs filed their Motion, seeking centralization of the same litigation in the Eastern District of Michigan before the Honorable Matthew F. Leitman. ECF Nos. 1, 1-1. The brief is substantially the response those same plaintiffs filed in the previously dismissed MDL the day before that docket closed. *Compare* ECF No. 1-1 *with* Response of The Burnham/Jones Plaintiffs to Plaintiffs Gelbspan and Granados' Withdrawal of Motion for Centralization and Transfer to the

Northern District of California, *In re: 2026 Multistate Cyclosporiasis Outbreak Litigation*, MDL No. 3196 (J.P.M.L. 2026), ECF No. 33. Two passages are new. The first asserts that "the ability for informal coordination and transfer is unlikely" and that movants are "unaware of any steps taken by Defendants or other Plaintiffs to coordinate these cases in a single District." ECF No. 1-1 at 7. The second concedes that individual facts "will vary (as in any mass tort personal injury case)," but argues the common discovery "will need to occur regardless." *Id.*

## III. ANALYSIS

The Panel may transfer actions under Section 1407 only where they "involv[e] one or more common questions of fact," and only "upon its determination that transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). Common questions alone are not enough. "Where only a small number of actions and districts are involved, the moving party bears a heavier burden to demonstrate the need for centralization." *In re Transocean Ltd. Sec. Litig. (No. II)*, 753 F. Supp. 2d 1373, 1374 (J.P.M.L. 2010). The movant bears the burden of establishing "that centralization would be the most efficient path for this litigation." *In re Belviq (Lorcaserin HCl) Prods. Liab. Litig.*, 555 F. Supp. 3d 1369, 1370 (J.P.M.L. 2021). That burden is not carried where "individualized factual issues concerning causation will predominate and diminish the potential to achieve significant efficiencies in an MDL." *Id.*

The Panel has also made clear that Section 1407 is a last resort. Centralization "under Section 1407 should be the last solution after considered review of all other options." *In re Best Buy Co., Cal. Song-Beverly Credit Card Act Litig.*, 804 F. Supp. 2d

1376, 1378 (J.P.M.L. 2011); *see also In re U.S. Postal Servs. Litig.*, 640 F. Supp. 3d 1410 (J.P.M.L. 2022) (denying centralization of "just three actions" with two already in the same district before the same judge). Moreover, where the involved actions are covered by a small number of counsel, "informal cooperation among the involved attorneys and courts is both practicable and preferable." *In re Ne. Contaminated Beef Prods. Liab. Litig.*, 856 F. Supp. 2d 1354, 1355 (J.P.M.L. 2012).

**A. Movants have not carried their burden, because the coordination they seek already exists.**

*Burnham* and *Jones* are both pending in the Eastern District of Michigan. So are four other related cases. These six matters account for the majority of the sixty-eight plaintiffs Movants count — fifty-two of whom are named in just two of the six actions in that district, *Burnham* and *Jones*. ECF No. 1-1 at 2–3. Three of those six are already before Judge Leitman. *Id.* at 2.

Movants argue for centralization of these actions because they allege they need one judge, one set of case-management orders, and one schedule for the common corporate discovery. However, everything sought by Movants is already available by motion in the Eastern District of Michigan. Movants never address Federal Rule of Civil Procedure 42, which allows a court to, among other things, consolidate actions or "issue any other orders to avoid unnecessary cost or delay." Fed. R. Civ. P. 42(a)(3). This omission matters, because centralization is the last solution after consideration of all other options available to the parties. *In re Best Buy Co.*, 804 F. Supp. 2d at 1378. The only thing Section 1407 supplies that Rule 42 does not is the power to bring in the actions of plaintiffs who oppose being brought in.

The same goes for the putative class action matters alleging economic loss. *Gelbspan* and *Null* were filed in the Northern District of California, and the class plaintiffs filed a motion under Rule 42 to formalize consolidation there. Plaintiffs' Motion for Consolidation of Related Actions and Appointment of Interim Co-Lead Counsel, *Gelbspan et al. v. Taylor Fresh Foods, Inc.*, No. 5:26-cv-07346-NC (N.D. Cal. June 16, 2026), ECF No. 5. While that motion has not been fully briefed, the Taylor Farms Defendants have already indicated to the Panel they are "not opposed [to] consolidation of the Granados/Gelbspan class action with other class actions pending in the Northern District of California," and that "[t]hose class actions can most effectively and efficiently be adjudicated in that forum and through that consolidation." Defendants Taylor Fresh Foods, Inc. and Taylor Farms California, Inc.'s Response to Withdrawal of Motion to Transfer and Opposition to Transfer and Centralization, *In re: 2026 Multistate Cyclosporiasis Outbreak Litigation*, MDL No. 3196 (J.P.M.L. 2026), ECF No. 30 at 2. Responding Plaintiffs agree.

Three of the four putative class actions Movants seek to centralize are therefore already gathered in one court, with the two alleging claims of economic loss already seeking consolidation pursuant to Rule 42. The personal-injury side is largely gathered in another. Therefore, an MDL would neither serve the "convenience of parties and witnesses" nor "promote the just and efficient conduct" of these actions, it would add a further layer of proceedings to a docket that is already substantially organized. 28 U.S.C. § 1407(a).

**B. The personal-injury actions and the purchaser class actions are two substantively different proceedings.**

Two of the four putative class actions, *Gelbspan* and *Null*, plead purchaser classes and allege no illness, and the *Giles* proposed class requires only consumption of contaminated product, not injury. Only *Koss* proposes a class defined by diagnosed illness. All four share the same center of gravity: Rule 23, which requires a showing of class definition, predominance, and a classwide damages model. None of that arises in Responding Plaintiffs' cases. These cases require proof, plaintiff by plaintiff, of consumption at an identified restaurant on an identified date, a clinical course consistent with cyclosporiasis, a differential diagnosis, and this plaintiff's own records, providers, and damages, under the law of the plaintiff's own state.

The Panel has treated that divide as a reason to deny centralization, not to order it. In *In re OxyElite Pro & Jack3d Prods. Liab. Litig.*, 11 F. Supp. 3d 1340, 1341 (J.P.M.L. 2014), the involved actions consisted of "both individual personal injury actions and false advertising class actions," and the Panel denied transfer. It mattered that the class plaintiffs "represent that they will not delve into the medical issues raised by the personal injury actions," and instead would focus on the advertising claims. 11 F. Supp. 3d at 1341. The same is true here, and more starkly: *Null* disclaims bodily injury outright while the personal injury cases will rely almost exclusively on medical issues.

**C. Individualized causation predominates over common questions of fact.**

The Panel has repeatedly declined to centralize dockets in which individualized issues of causation predominate over the common questions of fact, including dockets closely resembling this one. Take, for example, *In re Belviq*, 555 F. Supp. at 1370, where the Panel faced thirteen actions, twelve "individual personal injury actions" and "one

putative class action" pleading consumer-protection and warranty claims. The Panel denied centralization. 555 F. Supp. 3d at 1371. Although the actions shared common questions about the product, movants "failed to meet their burden of establishing that centralization would be the most efficient path," because "individualized factual issues concerning causation will predominate and diminish the potential to achieve significant efficiencies in an MDL." *Id.* at 1370.

The Panel has reasoned the same way about a foodborne outbreak with a tighter factual nucleus than this one. In *Northeast Contaminated Beef*, every action arose from *E. coli* contamination of ground beef. The Panel denied transfer because "[i]ndividualized issues of causation concerning each plaintiff's injuries appear to predominate among the actions." 856 F. Supp. 2d at 1354–55. The same is true even where the number of actions is many times larger than the docket here. The Panel denied centralization of ninety-two actions in *In re Rely Tampon Products Liability Litigation*, 533 F. Supp. 1346, 1347 (J.P.M.L. 1982), because although "the actions in this litigation involve some common questions of fact," it was "not persuaded that these common questions of fact will predominate over individual questions of fact present in each action." *See also In re Mirena IUS Levonorgestrel-Related Prods. Liab. Litig.*, 38 F. Supp. 3d 1380, 1381 (J.P.M.L. 2014) (denying transfer given the "individualized causation disputes likely to predominate").

As is relevant to the issues before the Panel, the individual inquiry here is unusually demanding because whole genome sequencing "isn't available for" *Cyclospora* so a *Cyclospora* case cannot be matched to a source the way a *Salmonella* or *E. coli* case can.[6] Nor is this the only active *Cyclospora* investigation this summer. Indeed, FDA counts four

[6] Ctrs. for Disease Control & Prevention, *How Data Are Collected for Cyclosporiasis*, https://www.cdc.gov/cyclosporiasis/about-data/surveillance/index.html (last visited Sept. 8, 2026).

additional active *Cyclospora* outbreaks across the country, none of which has yet been tied to any source.[7] The consequence is that each plaintiff must prove "what, when, and where" he or she consumed, whether that product caused the illness, and whether that product came from Taylor Farms. These are not damages questions. They go to liability and causation, and they must be answered one plaintiff at a time.

Five total active outbreaks across the country make attributing who ate what and when and where an exceedingly fine needle to thread, which is a task not well suited to the MDL process. Responding Plaintiffs can thread that needle: each consumed Taylor Farms product served at a Taco Bell restaurant during the outbreak period, and each has been linked to the Taylor Farms Outbreak through the public-health investigation. Not every plaintiff Movants would sweep into an MDL can say the same.

The *Gelbspan* matter illustrates the problem. It proposes a "California Sub-Class" of California plaintiffs who "purchased one or more Products sold by [Taylor Fresh Foods, Inc.] during the period of June and July 2026 and subject to any potential, subsequent recalls." Complaint ¶ 37, *Gelbspan et al. v. Taylor Fresh Foods, Inc.*, No. 5:26-cv-07346-NC (N.D. Cal. June 16, 2026), ECF No. 1. That sub-class cannot be squared with the Taylor Farms Outbreak. FDA's investigation confirms that Taylor Farms did not distribute the implicated product to California, and FDA has linked no California illness to the Taylor Farms Outbreak.[8]

Meanwhile, FDA is investigating four other active *Cyclospora* outbreaks nationwide, none of which has yet been tied to any source. And because whole genome sequencing is not available for *Cyclospora*, it is more difficult to sort one outbreak's cases

---

[7] *Supra note 5.*
[8] U.S. Food & Drug Admin., *supra* note 2.

from another's. Whether a given claimant is part of the Taylor Farms Outbreak at all — rather than one of the four others, or a sporadic case — must therefore be established claimant by claimant, through individualized proof of what he or she ate, and when and where, and whether that product was Taylor Farms product served at a Taco Bell restaurant or among those Taylor Farms product distributed at retail locations subject to the outbreak.

Centralization presumes a common factual core; here, even membership in the outbreak is an individualized question that precedes every common one. A docket in which the threshold question of who belongs must be litigated one plaintiff at a time is precisely one in which "individualized factual issues concerning causation will predominate and diminish the potential to achieve significant efficiencies in an MDL." *Belviq*, 555 F. Supp. 3d at 1370.

**D. Informal coordination is not merely practicable, it is already underway.**

Movants tell the Panel that "the ability for informal coordination and transfer is unlikely," and that they are "unaware of any steps taken by Defendants or other Plaintiffs to coordinate these cases in a single District." ECF No. 1-1 at 7. Filings from the prior MDL provide otherwise.

Taylor Farms already reported that it is represented by the same national counsel in every matter, that the plaintiffs' firms with the deepest food-safety experience "currently have over 1500 claimants," and that "[c]ounsel are already working collaboratively to exchange information regarding those claimants and explore possible resolution of claims outside of litigation" — an approach "used by counsel in prior Cyclospora and other foodborne illness outbreaks" that "resulted in significantly reduced legal expenses and more rapid disposition of claims." Defendants Taylor Fresh Foods, Inc. and Taylor Farms

California, Inc.'s Response to Withdrawal of Motion to Transfer and Opposition to Transfer and Centralization, *In re: 2026 Multistate Cyclosporiasis Outbreak Litigation,* MDL No. 3196 (J.P.M.L. 2026), ECF No. 30 at 4. Counsel for the Parrish plaintiffs told the Panel that "informal coordination is practical and already underway," and that centralization "would disrupt this proven collaborative process, add costs and overhead, and likely delay efficient resolution of claims." Plaintiffs Preston and Marie Parrish's Response to Withdrawal of Motion for Centralization and Transfer to the Northern District of California, *In re: 2026 Multistate Cyclosporiasis Outbreak Litigation,* MDL No. 3196 (J.P.M.L. 2026), ECF No. 34 at 1. Taco Bell agreed that "the parties are already coordinating." Defendants Taco Bell Corp. and Taco Bell of America LLC's Response in Support of Movants' Withdrawal, *In re: 2026 Multistate Cyclosporiasis Outbreak Litigation,* MDL No. 3196 (J.P.M.L. 2026), ECF No. 35 at 1. That Movants are unaware of this process is not evidence that it is inadequate. Moreover, that coordination continues as of this Response. Counsel for Responding Plaintiffs is actively engaged with other parties to develop and coordinate these actions.

The alignment and synergy of counsel here is of the kind the Panel has repeatedly found sufficient. *Belviq* relied on it: "[p]laintiffs in over half the actions before us are represented by the same counsel, and four of the other actions are pending in the same district, where two already have been related before the same judge." *Belviq*, 555 F. Supp. 3d at 1370. *OxyElite* relied on it: "[t]here are a limited number of actions and involved counsel, with two groups of plaintiffs' counsel already coordinating most of the personal injury actions." *OxyElite*, 11 F. Supp. 3d at 1341–42. Here, plaintiffs in seven of the fourteen listed actions are represented by two groups of counsel; the defendants are

represented by common national counsel; six of the fourteen actions are pending in one district; and three of those six are before one judge.

Nor does the minimal number of districts defeat informal coordination. The Panel denied centralization of twenty-nine actions in *In re The Cooper Companies, Inc., IVF Global Culture Media Products Liability Litigation*, 753 F. Supp. 3d 1380, 1381 (J.P.M.L. 2024), where the actions were "pending in just three districts before four judges," the actions in one district "already have been related before the same judge," and "almost all plaintiffs to those actions are represented by two law firms." This docket is fourteen actions, six of them in one district.

Every action is in its infancy. Cross-notice of corporate depositions, a shared document depository, a stipulation that generic discovery is usable in all actions, and coordinated Rule 45 practice will capture nearly every efficiency an MDL would offer. *See In re Eli Lilly & Co. (Cephalexin Monohydrate) Patent Litig.*, 446 F. Supp. 242, 244 (J.P.M.L. 1978) (listing various methods for minimizing duplicative pretrial proceedings). Finally, Movants' prediction that more cases will be filed is not a reason to centralize. ECF No. 1-1 at 9. Any later-filed case would present the same plaintiff-specific questions of exposure, latency, and severity that predominate in the actions already before the Panel. Indeed, the Panel has "often" stated that it is "disinclined to take into account the mere possibility of future filings in our centralization calculus." *Belviq*, 555 F. Supp. 3d at 1370 (quoting *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices & Prods. Liab. Litig.*, 959 F. Supp. 2d 1375, 1376 (J.P.M.L. 2013)).

**E. If the Panel centralizes, it should exclude the personal-injury actions.**

Section 1407 does not require all-or-nothing treatment, and the Panel regularly centralizes a subset of the actions before it. If the Panel centralizes at all, it should limit any MDL to the economic-loss class actions and exclude the individual personal-injury actions. That disposition matches the efficiencies actually available. The individualized causation questions that defeat centralization under *Belviq* and *Northeast Contaminated Beef* are confined to the personal-injury actions, and the economic-loss class actions do not present them.

## IV. CONCLUSION

The Panel should deny the Motion and decline to transfer and consolidate these actions. In the alternative, the Panel should limit any transfer and coordination of actions to the economic-loss class actions and exclude the personal-injury actions.

DATED: September 15, 2026.

Respectfully submitted,

By: /s/ William D. Marler

William D. Marler
**MARLER CLARK, INC., PS**
180 Olympic Drive S.E.
Bainbridge Island, WA 98110
(206) 346-1888
bmarler@marlerclark.com
*Counsel for Plaintiffs Ayyad, Bogard, Caruso, Hercula, and O'Hara*